UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY as successor to THE AETNA CASUALTY AND SURETY CO., | : : : | CIVIL ACTION NO. |
| Plaintiff, | : : : | |
| v. | : : | |
| R & Q REINSURANCE COMPANY, formerly known as ACE AMERICAN REINSURANCE COMPANY, formerly known as CIGNA REINSURANCE COMPANY, formerly known as INA REINSURANCE COMPANY, | : : : : : : | |
| Defendant. | : | DECEMBER 10, 2010 |

## COMPLAINT

1. This is an action for breach of contract. The Plaintiff, Travelers Casualty and Surety Company, successor in interest to The Aetna Casualty and Surety Co. ("Plaintiff" or "Travelers Casualty"), entered into a series of reinsurance contracts with the INA Reinsurance Company to whom defendant, R&Q Reinsurance Company is the successor in interest. R&Q has failed and refused to pay valid claims due under those contracts, and Travelers Casualty seeks damages arising out of R&Q's breaches of the contracts.

**I.   PARTIES**

2. The Plaintiff, Travelers Casualty and Surety Company, is a corporation organized under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut. Travelers Casualty is successor in interest to Aetna Casualty & Surety Co. Throughout this Complaint, the term "Travelers Casualty" will encompass both Travelers Casualty and Surety Company and Aetna Casualty & Surety Co.

3. The defendant R&Q Reinsurance Company is a corporation organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business at Cambridge, Massachusetts. Based upon information and belief, R&Q Reinsurance Company was formerly known as Ace American Re, which was formerly known as CIGNA Reinsurance Company, which was formerly known as INA Reinsurance Company. Hereinafter, "R&Q" shall refer to R&Q Reinsurance Company and each of its predecessors in interests.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The action is between citizens of different states, and the amount in controversy exceeds $75,000.00 excluding interest and costs.

5. This Court has personal jurisdiction over the defendant R&Q because R&Q systematically and continuously transact business within the State of Connecticut.

6. Venue is appropriate in this Court under 28 U.S.C. § 1391(c) because Travelers is located in this district and a substantial part of the events or omissions giving rise to the reinsurance claim occurred in this district.

## III. THE REINSURANCE CONTRACTS

7. At all times relevant to this Complaint, Travelers Casualty was a company engaged in the business of insurance and related financial services.

8. In the course of conducting its insurance business, Travelers Casualty purchased reinsurance protection. Reinsurance has been described as "insurance for insurance companies." Generally speaking, a reinsurance contract is one in which an insurance company – called a "ceding company," or "cedent" – pays a premium to a second insurer, called a "reinsurer." In return, the reinsurer agrees to accept some or all of the risk of the insurance company's policies.

9. The defendant R&Q was among several reinsurers that subscribed to a series of reinsurance contracts, commonly referred to in the industry as reinsurance treaties, that compromised what was referred to as Travelers Casualty's Blanket Excess of Loss program. The program incepted in 1962 and renewed annually through the annual periods that are involved in this action. In each year, different reinsurers subscribed to the program at different times and at different layers of participation.

10. The relevant treaties at issue in this action are the Blanket Casualty Excess of Loss Reinsurance Agreements covering the period from April 1, 1976 to April 1, 1979 (the "Reinsurance Treaties"). The Reinsurance Treaties are a particular type of reinsurance agreement that permits the aggregation or accumulation of multiple underlying losses that have similar causes or attributes as a single reinsurance loss.

11. In the Reinsurance Treaties, R&Q promised to provide reinsurance coverage to Travelers Casualty in return for Travelers Casualty's payment of premium. More specifically, R&Q promised to indemnify Travelers Casualty for, among other things, each and every loss which occurs during the terms of the Reinsurance Treaties.

12. The Reinsurance Treaties define the term "disaster and/or casualty" so as to "be understood to include each and every accident, occurrence and/or causative incident, it being further understood that all loss resulting from a series of accidents, occurrences and/or causative incidents having a common origin and/or being traceable to the same act, omission, error and/or mistake shall be considered as having resulted from a single accident, occurrence and/or causative incident."

13. In the Reinsurance Treaties, R&Q promised not to attempt to avoid their reinsurance obligations by second-guessing Travelers Casualty's settlements with policyholders

and claimants.  R&Q agreed that any and all payments made by Travelers Casualty in settlement of loss or losses under its policies shall be unconditionally binding upon R&Q and that amounts falling to R&Q's share of reinsurance shall be immediately payable to Travelers Casualty upon reasonable evidence of the amount paid by Travelers Casualty being presented.  Specifically, R&Q promised "to abide by the loss settlements of" Travelers Casualty and also agreed that settlements reached by Travelers Casualty would "be considered as satisfactory proofs of loss."

14.     In the Reinsurance Treaties, R&Q promised to pay Travelers Casualty's reinsurance claims promptly.  Specifically, R&Q agreed that the amounts they owed Travelers Casualty under the Reinsurance Treaties would be "immediately payable to [Travelers Casualty] . . . upon reasonable evidence of the amount paid or to be paid by [Travelers Casualty] being presented to the Reinsurers."

15.     Among other policies, the Reinsurance Treaties reinsured several insurance policies that Travelers Casualty issued to Armstrong Contracting and Supply Company ("ACandS") (the "Travelers Casualty Policies").  With respect to the billings at issue in this Complaint, Travelers Casualty issued the four primary liability insurance policies to ACandS covering the period from January 1, 1976 to January 1, 1980 (collectively the "ACandS Post-Date Policies").

16.     Travelers Casualty also issued primary liability insurance policies to ACandS covering certain periods before the coverage provided by the ACandS Post-Date Policies.  These earlier ACandS policies ("the Pre-Date Policies") were also reinsured under the Blanket Excess of Loss program.

## IV.    THE ACandS CLAIMS

17.    At all times relevant herein, ACandS was allegedly engaged in the business of handling, distributing, installing, and using asbestos-containing materials.

18.    ACandS became the subject of numerous claims from individuals alleging that they were injured by asbestos used by ACandS in its business activities (the "Asbestos Claims"). ACandS alleged that these Asbestos Claims included both product and non-product claims.

19.    ACandS asserted that Travelers Casualty was obligated under the insurance policies that it issued to ACandS to defend and/or indemnify them with respect to the underlying Asbestos Claims.

20.    Travelers Casualty made indemnity payments and incurred defense and other costs, in connection with ACandS's tender of the Asbestos Claims to the underlying policies issued by Travelers Casualty.  All of these indemnity, defense and other expenses are referred to in this Complaint as the "Asbestos Losses."

21.    As a result of these payments by Travelers Casualty, ACandS eventually exhausted the limits of the Travelers Casualty Pre-Date Policies.  Travelers Casualty billed its reinsurers for the amounts paid under the Pre-Date Policies.

22.    ACandS maintained, however, that Travelers Casualty remained liable under the ACandS Post-Date Policies to defend and indemnify ACandS indefinitely because ACandS alleged that many of the Asbestos Claims were non-product losses under the ACandS Post-Date Policies.

23.    In 2007 Travelers Casualty and ACandS entered into a settlement agreement (the "ACandS Settlement").  The ACandS Settlement obliged Travelers Casualty to pay $449,000,000 to the ACandS Asbestos Settlement Trust.  On or about September 4, 2007,

Travelers Casualty paid $449,000,000 to an escrow account and said funds were transferred to the ACandS Asbestos Settlement Trust thereafter.  Under the Settlement Agreement, ACandS fully released all claims against the ACandS Post-Date Policies.

## V.   TRAVELERS CASUALTY'S REINSURANCE BILLINGS AND REINSURERS' REFUSAL TO PAY

24.  Beginning in 1994, Travelers Casualty submitted reinsurance billings to its reinsurers under the Blanket Excess of Loss program for loss payments arising out of Travelers Casualty's insurance of ACandS, including Travelers Casualty's insurance of ACandS under the Pre-Date Policies.

25.  In response to Travelers Casualty's earlier reinsurance billings, ACE-USA, which managed R&Q's predecessor in interest as well as Century Indemnity Company both of which were ACE-USA companies, agreed that all non-product asbestos losses should be treated as one reinsurance loss under the language of the treaties.

26.  In a November 19, 1999 letter, ACE-USA stated  "we are willing to accept the non-product losses of…AC&S as one occurrence under all of the treaty years."

27.  At the time that ACE-USA sent this letter to Travelers Casualty, the defendant R&Q's predecessor in interest, was owned by ACE-USA and part of the group of insurance companies whose reinsurance claims were handled by ACE-USA.

28.  Accordingly, at the time that ACE-USA sent this letter to Travelers Casualty its conduct and statements were binding on R&Q's predecessor in interest and are presently binding on R&Q.

29.  As a result of the ACandS Settlement, in November 2008, Travelers Casualty submitted reinsurance billings to its reinsurers.

30. Each of the reinsurance billings was accompanied by a proof of loss providing "evidence of the amount paid."

31. Consistent with its prior reinsurance billings to its reinsurers participating in earlier years of the Blanket Excess of Loss program, Travelers Casualty presented all of the ACandS Asbestos Losses in each year as a single reinsurance loss.

32. Specifically, on or about November 22, 2008, Travelers Casualty billed R&Q the total amount of $10,682,586.91. The amount is the sum total due from R&Q under the Reinsurance Treaties at issue in this action and the treaty covering the annual period from April 1, 1979 to April 1, 1980, as a result of the payments by Travelers Casualty made under and in connection with the ACandS Settlement. The amount due under the Reinsurance Treaties at issue in this litigation is $8,500,000.00. The amount due from R&Q under the 1979-1980 reinsurance treaty—$2,182,586.91—is not at issue in this litigation because any dispute arising from R&Q's failure to pay the amount due under the 1979-1980 reinsurance treaty is subject to the arbitration provision contained in that treaty.

33. Although R&Q had promised to pay reinsurance claims immediately upon receiving "evidence of the amount paid," R&Q has refused to pay Travelers Casualty's reinsurance billings arising out of the ACandS Settlement.

## COUNT ONE
**(Breach of Contract against R&Q)**

34. Travelers Casualty realleges all of the allegations of each of Paragraphs 1 through 35 as if fully set forth herein.

35. The Reinsurance Treaties are binding contracts between Travelers Casualty and its reinsurers, including R&Q.

36. Under the terms of the Reinsurance Treaties to which it subscribed, R&Q is obligated to pay to Travelers Casualty $8,500,000.00, as a result of the payments by Travelers Casualty under the ACandS Settlement. In accordance with the terms of the Reinsurance Treaties, Travelers Casualty has billed R&Q for the $8,500,000.00, it owes Travelers Casualty as a result of the payments by Travelers Casualty under the ACandS Settlement.

37. R&Q has failed and wrongfully refused to make payments on the reinsurance billings. By improperly failing to make any such payments, R&Q has breached the contractual obligations it owes to Travelers Casualty under the Reinsurance Treaties.

38. Travelers Casualty has performed all of the obligations required of it under the Reinsurance Treaties, including but not limited to the payment of premium.

39. Travelers Casualty has been damaged by R&Q's breach of contract. Specifically, Travelers Casualty has been damaged by R&Q's breach of contract in the principal amount of at least $8,500,000.00, excluding interest and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Travelers Casualty respectfully prays for judgment against the defendant Reinsurers as follows that:

(1) As to Count One, a judgment be entered, stating that R&Q has breached its contractual obligations to Travelers Casualty under the Reinsurance Treaties by failing to make payments on amounts that Travelers Casualty has properly billed to R&Q with respect to the ACandS Settlement and awarding Travelers Casualty consequential damages in the amount of the sum of all present arrearages as reflected in the billings submitted by Travelers Casualty to R&Q, together with pre- and post-judgment interest;

(2) the Court award Travelers Casualty its costs associated with this action; and

(3)     the Court award such other relief as the Court may deem just and proper.

                                      PLAINTIFF, TRAVELERS CASUALTY AND
                                      SURETY COMPANY as successor to THE
                                      AETNA CASUALTY AND SURETY CO.,

                                      By     /s/ Joseph K. Scully
                                         Daniel L. FitzMaurice (ct05331)
                                         *dlfitzmaurice@daypitney.com*
                                         Joseph K. Scully (ct26541)
                                         *jkscully@daypitney.com*
                                         Thomas O. Farrish (ct26917)
                                         *tofarrish@daypitney.com*
                                         Day Pitney LLP
                                         242 Trumbull Street
                                         Hartford, Connecticut 06103-3499
                                         (860) 275-0100
                                         (860) 881-2516 (fax)
                                         Its Attorneys